
*105121 91 67*

*CJ-2021-5425*
*Bonner*

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
### STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

DEC 2 0 2021

RICK WARREN
COURT CLERK

BECKY STEINKAMP,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )       Case No.: CJ-2021-112
                                    )
STATE FARM FIRE AND CASUALTY        )
COMPANY, and TONY BRUMMITT          )
INSURANCE AGENCY, INC.,             )
                                    )
        Defendants.                 )

## CJ-2021-5425

### PETITION

Plaintiff Becky Steinkamp, for her cause of action against Defendants State Farm Fire and

Casualty Company ("State Farm") and Tony Brummitt Insurance Agency, Inc. ("Brummitt")

(collectively, "Defendants"), states as follows:

### JURISDICTION AND VENUE

1.      Plaintiff Becky Steinkamp ("Plaintiff") is a citizen of the State of Oklahoma.

2.      Defendant State Farm Fire and Casualty Company is a foreign insurance company

licensed and engaged in the business of insurance in the State of Oklahoma.

3.      Defendant Tony Brummitt Insurance Agency, Inc. is a domestic for-profit

corporation with its headquarters in Oklahoma County, Oklahoma.

4.      Venue is proper under 12 O.S. § 137.

### FACTUAL BACKGROUND

5.      Plaintiff entered into a contract of insurance with State Farm to provide coverage

for her residence in 2005. Brummitt acted as State Farm's agent to procure and maintain Plaintiff's

homeowner's policy, Policy No. 36-CA-J437-2 ("Policy").

EXHIBIT

2

6.      In 2008, Plaintiff filed a hail claim with State Farm. Brummett recommended a roofer to Plaintiff and said roofer installed a new room on Plaintiff's home. Brummitt purportedly inspected Plaintiff's home and knew that Plaintiff's roof was installed in 2009. Brummitt represented Plaintiff's new roof met State Farm's underwriting guidelines.

7.      Throughout the years, Brummitt continued to represent Plaintiff's roof met State Farm's underwriting guidelines, which included being free from hail damage.

8.      In or around April 2021, Plaintiff noticed water leaks in the ceiling in her living room, master bedroom, laundry room, and one other bedroom in her home.

9.      On or about April 29, 2021, a roofer from Opus Restoration came to Plaintiff's residence to inspect the source of the water intrusion. The roofer informed Plaintiff that her roof had sustained hail damage and that she should contact her insurance company, State Farm.

10.     Plaintiff then submitted a claim (Claim No. 36-19D5-58Q) to State Farm for the damage to her roof. State Farm initially represented to Plaintiff that a hailstorm had occurred near her residence on or about July 10, 2020, and State Farm chose said date as the date of loss.

11.     State Farm sent Hancock Claims Consultants ("Hancock") to inspect Plaintiff's roof on or about May 2, 2021, and another adjuster to inspect the interior damage on or about May 13, 2021.

12.     On or about May 13, 2021, State Farm sent Plaintiff's husband a letter denying payment of the claim, reasoning that their inspection did not reveal any accidental direct physical loss to Plaintiff's roof. Specifically, Hancock found no hail damage. Further, State Farm denied payment for any other damages found in the inspection because they determined them to be less than Plaintiff's deductible.

2

13.     Plaintiff contacted State Farm and requested a second inspection on her roof. State Farm advised Plaintiff to have the roofer from Opus Restoration send in photographs and its estimate.

14.     On or about July 21, 2021, State Farm advised Plaintiff over the phone that it would not conduct an additional inspection of Plaintiff's roof.

15.     To date, Plaintiff has not been provided with a copy of the inspection report prepared by Hancock for the damage to Plaintiff's roof despite Plaintiff's request. In justifying its refusal, State Farm advised Plaintiff the report prepared by Hancock was "privileged."

16.     On or about August 1, 2021, A to Z Inspection ("AZ") performed an inspection on Plaintiff's roof. AZ indicated where hail had damaged Plaintiff's roof by outlining the areas in chalk and took additional photographs. AZ also concluded that Plaintiff's roof had hail damage.

17.     On or about August 6, 2021, State Farm sent an engineer from Rimkus Consulting Group, Inc. ("Rimkus") to inspect Plaintiff's roof. The chalk from AZ's inspection was still visible on the roof when Rimkus inspected the roof.

18.     On or about September 3, 2021, State Farm sent a final letter denying Plaintiff's claim. The letter referred to the findings in the report generated by Rimkus. In the report, Rimkus concluded that the shingles on the roof had isolated indications of hailstone impacts; however, these hailstones were from a hailstorm that occurred on April 28, 2017, or before.

19.     Further, Rimkus concluded that the generalized granule loss of the asphalt shingle roof covering was a result of normal age-related deterioration, and that the roof had not been damaged by wind, either.

20.     Plaintiff advised Brummitt that State Farm was denying the claim. Brummitt told Plaintiff he would follow up with State Farm. After some time, Brummitt advised Plaintiff that State Farm was firm in their denial of her claim.

21.     On November 4, 2021, Plaintiff had the roofer repairing her neighbor's home look at her roof, take pictures, and research documented recent hailstorms in the area. Plaintiff was informed that her roof should have been declared a total loss.

22.     To date, Plaintiff has still not been paid the full amount of benefits she is owed despite fully complying with the terms and conditions of the Policy.

<u>**COUNT I:  BREACH OF CONTRACT**</u>

23.     Plaintiff fully incorporates into this Paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein.

24.     Plaintiff entered into a contract of insurance with State Farm to provide coverage for hail damage to her property. Plaintiff's Policy with State Farm was in full force and effect at all material times hereto.

25.     Plaintiff provided proper and timely notice to State Farm of her claim arising from hail damage that occurred to her home.

26.     Plaintiff has in all material ways complied with the terms and conditions of the Policy.

27.     State Farm, however, has breached its contractual obligations under the terms and conditions of the insurance contract with Plaintiff by failing to properly investigate Plaintiff's claim and pay Plaintiff all benefits to which she is entitled under the terms and conditions of the Policy.

28.      As a result of State Farm's breach of contract and other wrongful conduct, Plaintiff has sustained financial losses, mental and emotional distress and has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

## COUNT II:  BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

29.      Plaintiff fully incorporates into this Paragraph each and every allegation contained in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein.

30.      State Farm has a duty to deal fairly and in good faith with Plaintiff.

31.      State Farm breached its duty to deal fairly and in good faith by engaging in the following acts and omissions:

a.    Failing to perform a proper investigation in regard to Plaintiff's claims made under her homeowner's Policy;

b.    Refusing, without proper cause, to timely pay Plaintiff all benefits she is owed under the insurance contract and pursuant to Oklahoma law;

c.    Purposefully, wrongfully and repeatedly withholding pertinent benefits, coverages and other provisions due to Plaintiff under the terms and conditions of the insurance Policy in violation of Unfair Claims Settlement Practices Act, 36 O.S. §§ 1250.1-1250.16;

d.    Purposefully, wrongfully and repeatedly failing to communicate all coverages and benefits applicable to Plaintiff's claim;

e.    Forcing Plaintiff to retain counsel to recover insurance benefits to which she was entitled under the terms and conditions of the insurance contract;

f.    Knowingly and intentionally failing to engage in proper claims handling practices and failing to timely compensate its insured losses covered under its homeowner's insurance Policy;

g.    Using a combination of claim estimating software and unit pricing to systematically and methodically underpay and/or deny homeowner's claims, including that of Plaintiff;

h.    Engaging in outcome-oriented investigation and claim handling practices;

i.     Engaging in these improper claims practices knowing that its insured would suffer financial harm; and

j.     Putting its interest in maximizing financial gains and limiting disbursements above the interests of Plaintiff.

32.     As a consequence of State Farm's breach of the duty of good faith and fair dealing, Plaintiff has sustained damages, including deprivation of monies rightfully belonging to her, anger, stress, worry, physical and emotional suffering, attorney fees and litigation costs.

33.     The conduct of State Farm was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

34.     The actions of State Farm during the handling of Plaintiff's claim demonstrate it intentionally, and with malice, breached its duty to deal fairly and in good faith.  The actions of State Farm were intentional, malicious and consistent with an overall collective corporate goal of increasing profits through the systematic reduction or avoidance of claims. Plaintiff therefore seeks punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**COUNT III:  NEGLIGENT PROCUREMENT AND MAINTENANCE OF INSURANCE**

35.     Plaintiff fully incorporates into this Paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein.

36.     Plaintiff contacted and engaged Brummitt to procure insurance for her home. Plaintiff informed Brummitt of the specific Property to be insured, provided all details requested about the Property, and asked Brummitt to procure her a full replacement cost policy for her home, personal property and other structures. Brummitt represented to Plaintiff his familiarity with this type of insurance Plaintiff requested and represented that State Farm could obtain the insurance coverage requested and represented and agreed to procure such coverage that would provide replacement cost coverage to repair and/or replace the Property back to its pre-loss condition, in the event of damage and/or loss.

6

37.     Brummitt owed Plaintiff a duty to act in good faith and to exercise reasonable care, skill and diligence in the procurement and maintenance of insurance for Plaintiff.

38.     Brummitt had a duty to accurately inform Plaintiff of all coverages, benefits, limitations and exclusions in the coverage procured.

39.     Brummitt had a duty to appropriately maintain Plaintiff's insurance coverage and make any necessary modifications after issuance of the Policy, which included properly inspecting Plaintiff's house to confirm its condition.

40.     Brummitt was directly involved in determining the type of coverage Plaintiff received.

41.     Brummitt knew Plaintiff's roof was installed in 2009 and represented to Plaintiff it met all of State Farm's underwriting requirements.

42.     Brummitt represented to State Farm that Plaintiff's home continued to meet State Farm's underwriting requirements each year following 2009. Plaintiff's roof was insured for replacement cost coverage through the date the subject claim was made. State Farm would not insure Plaintiff's roof for replacement cost damage if it was damaged.

43.     Plaintiff assumed the Policy of insurance procured and maintained by Brummitt conformed to the representations he made to her.

44.     Brummitt was negligent and breached his duty owed to Plaintiff by failing to adhere to State Farm's underwriting guidelines and failed to accurately and truthfully answer Plaintiff's questions regarding the Policy coverages, by promising Plaintiff the Policy coverage selected and calculated by State Farm for Plaintiff was correct and would fully repair and/or replace the Property in the event of a loss.

45.     As a result of Brummitt's conduct, Plaintiff has sustained damages, including deprivation of monies rightfully belonging to her, anger, stress, worry, physical and emotional suffering, and has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

46.     The conduct of Brummitt was intentional, willful, malicious and in reckless disregard of the rights of the Plaintiff and is sufficiently egregious in nature to warrant the imposition of punitive damages.

## COUNT IV:  CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION

47.     Plaintiff fully incorporates into this paragraph each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein.

48.     Brummitt had a duty to exercise reasonable diligence and skill to obtain and accurately notify Plaintiff of the nature and character of the insurance procured.

49.     Brummitt had a duty to exercise reasonable diligence and skill in obtaining and accurately notifying Plaintiff of the nature and character of the insurance procured. Brummitt breached this duty by misrepresenting and/or concealing pertinent material facts to Plaintiff as follows:

     a.     Procuring, selling and renewing illusory insurance coverage and representing to Plaintiff that by purchasing a replacement cost policy with State Farm, she would be buying peace of mind, knowing such statement was untrue.

     b.     Representing to Plaintiff at the time the Policy was procured and with each renewal, that the Property met all underwriting requirements.

     c.     Misrepresenting how State Farm would pay a claim under the replacement cost provisions of the Policy.

     d.     Misrepresenting that all of State Farm's underwriting policies/guidelines were followed and met and that all necessary inspections of the Property occurred and were properly conducted.

50.     As a result of Defendants' conduct, Plaintiff's claim was wrongfully denied.

51.     Brummitt's misrepresentations constitute constructive fraud.

52.     Plaintiff was induced to accept and purchase the Policy as a result of Brummitt's misrepresentations and constructive fraud.

53.     Plaintiff was misled by Brummitt's misrepresentations and constructive fraud. Plaintiff relied on these misrepresentations to her detriment.

54.     As a result of Brummitt's constructive fraud and misrepresentation, Plaintiff has sustained financial loss and has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interests.

55.     Brummitt's conduct was intentional, willful, malicious and in reckless disregard of the rights of Plaintiff, and/or was grossly negligent, and is sufficiently egregious in nature to warrant the imposition of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs, interest, reasonable attorney fees, and other relief that this Court deems just, equitable, and proper.

Respectfully submitted,

_____
Reggie N. Whitten, OBA #9576
Michael Burrage, OBA #1350
J. Revell Parrish, OBA #30205
Jesse S. Ogle, OBA #34275
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, OK  73102
Telephone:    (405) 516-7800
Facsimile:    (405) 516-7859
Emails:       rwhitten@whittenburragelaw.com
              mburrage@whittenburragelaw.com
              rparrish@whittenburragelaw.com
              jogle@whittenburragelaw.com

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEYS' LIEN CLAIMED
JURY TRIAL DEMANDED**

10